# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF GEORGIA
# ALBANY DIVISION

| | | |
|---|---|---|
| TERRY MICHAEL HARDEN, | : | |
| Plaintiff, | : | |
| vs. | : | 1:05-CV-140WLS) |
| WARDEN THOMAS AMMONS, DEPUTY WARDEN GEORGE LASTER OFFICER MARCUS LEMACK; OFFICER CARTER; OFFICER JOHNSON; | : | |
| Defendants | : | |

## ORDER

Before the Court is Defendants' motion for summary judgment. (Doc. 11). For the following reasons, Defendants' motion for summary judgment (Doc. 11) is **GRANTED-IN-PART and DENIED-IN-PART.**

## BACKGROUND[1]

The instant complaint for relief was filed on October 14, 2005. In this complaint, Plaintiff alleges that he was denied his rights to be free from the excessive use of force against him as guaranteed by the Eighth Amendment of the United States Constitution. The action was brought pursuant to 42 U.S.C. § 1983. Apparently, the only claims brought and at issue are the Eighth Amendment claims. Further, Defendants seek summary judgment on these claims.

On or about April 21, 2005, while incarcerated at Lee State Prison, Plaintiff Harden had been at the medical department to seek treatment for a staph infection and pain in his foot. Plaintiff was denied the treatment he had requested and asked to speak to Nurse Miller about

---

[1]. The Court notes that both Defendants and Plaintiff have provided a less than expansive rendition of the alleged facts. Therefore, this opinion will so reflect the Court's own lack of knowledge about the details of the alleged incident that gave rise to the complaint.

his situation. Plaintiff was told to discuss the matter with Defendant Laster, the Deputy Warden. Plaintiff spoke with Defendant Laster and was told to return to building G1, apparently Plaintiff's dormitory. Plaintiff continued to explain to Laster that Plaintiff was having continued pain. At that point, Plaintiff was yelled at by Lt. Wells to get to his dormitory. Apparently, Plaintiff returned to the dormitory and asked Officer Thomas to place him in protective custody until Plaintiff could receive medical treatment. It is unclear what became of the request.

Around 2:15 p.m., Plaintiff was called to the ID room by CERT team member Defendant Lemack[2] and Lt. Wells. At the ID room Captain Jefferson and Defendant Laster were present. Apparently, Defendant Lemack told Plaintiff that "we need to talk to you," and Plaintiff was escorted to a secluded hall. Then Defendant Carter arrived on the scene. Lt. Wells then stated to Plaintiff to "talk that racial shit now." Plaintiff responded that he did not mean what he said earlier and that he needed medical treatment. Wells said, "You don't damn run nothing around here and you better keep your damn mouth closed and do what we say, do you hear me?" Plaintiff responded that he understood and was not intimidated by the officers. Plaintiff also explained that he needed medical attention.

Defendants do not provide any statement of fact concerning any of the events leading up to this point in the alleged encounter between Defendants and Plaintiff. Defendants statement of facts appear to begin at this point and vastly differ with those alleged and set forth by Plaintiff. Defendants have not filed a reply brief or reply to Plaintiff's statement of facts.

According to Plaintiff, Plaintiff was standing between Defendants Carter and Lemack. Lemack ordered Plaintiff to face Defendant Carter and "tell him you are not intimidated." Plaintiff looked at Carter but apparently did not say anything. Lemack then said to Plaintiff,

---

[2]. It is not clear whether Defendant Lemack's name is "Lemack or Lemacks." The complaint and most of the pleadings use "Lemack," while Defendants' brief and statement of facts use "Lemacks."

"Let me tell you something, I don't give a damn about you or your foot or your family or your lawyer, what I damn care about is my job and I'll be damned if you're going to make me look bad and loose it."

Plaintiff was then ordered by Defendant Carter to place his feet together, hands down by his side, and to look straight ahead. When Plaintiff complied with the order, Defendant Lemack swung and hit Plaintiff in the face. The blow caused Plaintiff's mouth to bleed. Plaintiff was then ordered to leave the area.

Plaintiff started walking, but to where it is unclear. Defendant Carter chased after Plaintiff and grabbed Plaintiff and forced Plaintiff into the wall. Captain Jefferson saw what was happening and ordered Defendant Carter to stop. Jefferson ordered Plaintiff to stop and "cuff up," which means assume a position to where the officers can place handcuffs on the inmate. While Plaintiff was attempting to comply with the order, Plaintiff was spitting blood. Some of the blood got on Defendant Johnson. Defendant Johnson, allegedly told Plaintiff, "Motherfucker you won't spit on nobody else." Defendant Johnson then began hitting Plaintiff in his face. Apparently, Plaintiff had been handcuffed. Defendants Lemack and Carter then joined Johnson in beating Plaintiff.

Captain Jefferson saw what was happening and ordered the Defendants to stop beating Plaintiff. Jefferson allegedly told Defendants not to beat Plaintiff "here." One of the Defendants allegedly threatened Plaintiff with further beatings once Plaintiff was placed in the hole. With Jefferson on the scene, Plaintiff was escorted to a shower cell. Jefferson ordered someone to get a camera and called for Nurse Miller. Miller allegedly treated Plaintiff for his wounds and bruises and then Plaintiff was placed in an isolation cell.

On April 25, 2005, Deputy Warden Haas allegedly went to Plaintiff's cell and discussed the incident with Plaintiff. Haas stated that for some reason Plaintiff could not file a formal grievance until Plaintiff had filed an informal grievance about the alleged assault. Haas gave Plaintiff the informal grievance form and promised that Plaintiff would eventually be able to file a formal grievance or that Haas would file the grievance on his behalf. Plaintiff

completed the informal grievance. It is unclear if a formal grievance was ever filed, but allegedly some sort of grievance is on file with Internal Affairs.

As stated previously, Defendants' statement of facts are completely different from that of the Plaintiff. According to Defendants, Plaintiff allegedly appeared somewhere in the prison where Defendant Lemack was located. Lemack had previously admonished Plaintiff, and Plaintiff went up to Defendant Lemack and stated: "I am going to get your ass." Plaintiff then refused to follow orders from Lemack. Defendants Johnson and Carter mysteriously appear on the scene, and along with Lemack, order Plaintiff to place his hands on the wall. Plaintiff refused to comply with that order and then Defendant Carter "used hands-on force by placing his right hand on Plaintiff's right shoulder and his left hand on Plaintiff's left shoulder." Defendant Carter then "placed" Plaintiff against the wall while Defendant Johnson placed handcuffs on Plaintiff. As Plaintiff was being escorted to isolation, Plaintiff threatened "to get" Defendants. Plaintiff allegedly spit in Lemack's face and asked, "How you like that, you motherfucking cracker?" Plaintiff was then escorted to a segregation cell and checked by medical personnel.

## DISCUSSION

### I. SUMMARY JUDGMENT STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." The Court is required to "resolve all reasonable doubts about the facts in favor of the non-movant, and draw all justifiable inferences in his or her favor." Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th Cir. 1993) (quotations and citations omitted).

The moving party carries the initial burden of showing that there is an absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986). The substantive law governing the case determines which facts are material, and

"summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986). For issues on which the non-movant bears the burden of proof at trial, the moving party "simply may show—that is, point out to the district court—that there is an absence of evidence to support the non-moving party's case. Alternatively, the moving party may support its motion for summary judgment with affirmative evidence demonstrating that the non-moving party will be unable to prove its case." Fitzpatrick, 2 F.3d at 1116 (quotations and citations omitted).

If the moving party fails to overcome this initial burden, the Court must deny the motion for summary judgment without considering any evidence, if any, presented by the non-moving party. Fitzpatrick, 2 F.3d at 1116. If, on the other hand, the moving party overcomes this initial burden, then the non-moving party must show the existence of a genuine issue of material fact that remains to be resolved at trial. Id. Moreover, the adverse party may not respond to the motion for summary judgment by summarily denying the allegations set forth by the moving party. Rather, the adverse party "must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party." Fed. R. Civ. P. 56(e).

## II. ANALYSIS

All Defendants have moved for summary judgment on all claims. Defendants argue they are entitled to summary judgment on the merits, that they are entitled to qualified immunity in their individual capacities and that they are entitled to Eleventh Amendment immunity in their official capacities.

### Qualified Immunity

Defendants argue that they are entitled to summary judgment on Plaintiff's federal claim asserted against them in their individual capacities. In other words, Defendants argue that Plaintiff's excessive force claim under the Eight Amendment is barred by the doctrine of qualified immunity.

The Supreme Court in Saucier v. Katz , 533 U.S. 194 (2001), clarified the mode of analysis the court must use when addressing a qualified immunity issue. In Saucier, the Court held that the merits of the Eight Amendment excessive force claim and the concern for the "objective reasonableness" of an officer for qualified immunity purposes were two distinct questions.

First, the Court stated that a court required to rule upon the qualified immunity issue must first consider whether the facts as alleged, taken in a light most favorable to the party asserting the injury show the officer's conduct violated a constitutional right. Id. at 201, *citing*, Siegert v. Gilley, 500 U.S. 226, 232 (1991). If no constitutional right would have been violated were the allegations established as true, there is no necessity for further inquiries concerning qualified immunity. Id. at 201. On the other hand, if a violation could be made out on a favorable view of the parties' submissions, the next sequential step is to ask whether the right was "clearly established" because qualified immunity inquiries have a further dimension. This inquiry, the Court explained must be taken in light of the specific context of the case, not as a broad general proposition. Id.

The right the officials allegedly violated must be "clearly established" in a more particularized sense. The Supreme Court reasoned in Saucier, that it is sometimes difficult for an officer to determine how the relevant legal doctrines, a traffic stop, search and arrest case, will apply to the factual situation the officer confronts. Id. at 204. The relevant dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. Id., *See*, Wilson v. Layne, 526 U.S. 603, 615 (1999). The defendant officer is entitled to summary judgment as a matter of law if the law would not have put the officer on notice that his conduct would be clearly unlawful. Id. at 203. According to the Supreme Court, the law does not require that for a specific form of conduct to be illegal that the conduct has previously been held unlawful. Hope v. Pelzter, 536 U.S. 730 (2002).

In the Eleventh Circuit, for a right to be "clearly established" for purposes of qualified

immunity, "the law must have earlier been developed in such a concrete and factually defined context to make it obvious to all reasonable government actors, in the defendant's place, that what he is doing violates federal law." Jackson v. Sauls, 206 F.3d 1156, 1164 (11th Cir. 2000), *quoting*, Lassiter v. Alabama A & M Univ. Bd. of Trustees, 28 F.3d 1146, 1149 (11th Cir. 1994).

The first inquiry is whether the facts as alleged, taken in a light most favorable to the party asserting the injury show the officers' conduct violated a constitutional right. Plaintiff had a right to be free from the unlawful use excessive force and cruel and unusual punishment. Hudson v. McMilliam, 503 U.S. 1 (1992). Plaintiff has clearly implicated a constitutional right to be free from the use of excessive force and cruel and unusual punishment under the Eight Amendment.

Likewise, as it relates to the issue of qualified immunity, Plaintiff has produced evidence that Defendants Lemack's, Carter's and Johnson's use of force was not only unreasonable, but that one could find that it was maliciously or wantonly applied to cause harm. Accordingly, Defendants Lemack's, Carter's and Johnson's motion for summary judgment that Plaintiff's Eighth Amendment claim is barred by the doctrine of qualified immunity (Doc. No. 11) is **DENIED.** As there is no admissible evidence that Defendants Ammons or Laster participated in the alleged assault or no evidence that they were aware of said assault, their motion for summary judgment on the issue of qualified immunity (Doc. No. 11) is **GRANTED**[3].

---

[3]. Plaintiff argues that Ammons and Laster, as policy makers, are liable for allowing the assault to happen, by encouraging said assaults to happen and for covering up the assault. Plaintiff has produced no admissible evidence that these Defendants are guilty of such acts. The only "evidence" that Plaintiff's relies on is a list of cases filed throughout the state of Georgia alleging that certain prison guards assaulted inmates. This evidence is not admissible evidence that these two Defendants, knew of said assaults, participated in said assaults, condoned said assaults or promulgated any policy or custom that allowed or encouraged said assaults. Accordingly, any claim against these Defendants in their individual capacities are also barred by qualified immunity.

Eleventh Amendment Immunity

Defendants maintain that they were sued in their official capacities, and as such, that they are entitled to Eleventh Amendment Immunity.

Eleventh Amendment Immunity bars the recovery of damages from the state. Edelman v. Jordan, 415 U.S. 615 (1974). Employees sued in their official capacities are actually suits against the state. As there is little or no question that Defendants are state employees, then they are entitled to Eleventh Amendment Immunity for monetary claims made against them in their official capacities. Accordingly, to the extent that Plaintiff seeks monetary damages against Defendants in their official capacities, Defendants motion for summary judgment on this issue (Doc. No. 11) is **GRANTED.**

Reasonable/Excessive Force

Defendants Lemack, Carter and Johnson argue that they are entitled to summary judgment as a matter of law because the force used to control Plaintiff was reasonable. As noted above, the evidence taken in the light most favorable to Plaintiff shows that a jury could conclude that the amount of force was not reasonable, but excessive. The material disputed facts show that when Defendants applied force to Plaintiff, Plaintiff was handcuffed during some of the time Plaintiff was subjected to force. This Court cannot find, as a matter of law, that said force was reasonable. Accordingly, Defendant's motion for summary judgment on this issue (Doc. No. 11) is **DENIED.**

**SO ORDERED**, this   27th   day of September, 2007.

　　　　　　　　　　　　　　　　　　   /s/W. Louis Sands   
　　　　　　　　　　　　　　　　　　**W. LOUIS SANDS, JUDGE**
　　　　　　　　　　　　　　　　　　**UNITED STATES DISTRICT COURT**